UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTINA EDDY,

    Plaintiff,

v.                                       Case No.: 2:17-cv-1113
                                          JUDGE GEORGE C. SMITH
                                          Magistrate Judge Jolson

J&D HOME IMPROVEMENT, INC., *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants J&D Home Improvement, Inc. and Pat Clemens' Partial Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 14). The motion is fully briefed and ripe for disposition. For the following reasons, Defendants' Partial Motion to Dismiss is **GRANTED**.

### I.    BACKGROUND

Plaintiff Christina Eddy and her husband, Phillip, both worked for Defendant J&D Home Improvement d/b/a The Basement Doctor ("J&D"). Plaintiff began working at J&D on May 18, 2012, as a team lead. She then worked in the call center as a manager and Philip worked as a laborer. Defendant Pat Clemens was Plaintiff's supervisor. (Doc. 9, Am. Compl. ¶¶ 20–23).

On October 5, 2015, Philip injured his back at work. He filed a worker's compensation claim with the Ohio Bureau of Worker's Compensation and is still undergoing treatment pursuant to that claim. Plaintiff alleges that as a result of the back injury, her husband is disabled within the meaning of the Americans with Disabilities Act. (*Id*. at ¶¶ 25–29).

In February 2016, Sarah Witt, a Human Resources employee at J&D, informed Plaintiff that she needed to switch her insurance to reflect that Plaintiff was now responsible for her husband's health insurance. (*Id*. at ¶¶ 30–31). Shortly after this change in insurance, Plaintiff was demoted to a team lead position and her pay was decreased from $19.19 per hour to $16.00 per hour. (*Id*. at ¶¶ 32–33).

Plaintiff alleges that J&D wanted to fire her and began looking for reasons to do so. (*Id*. at ¶¶ 35–42). On April 29, 2016, Plaintiff was receiving all incoming calls and she experienced technical difficulties with the phone system. She asserts that J&D did this intentionally to affect her performance and make it easier to terminate her. (*Id*. at ¶¶ 39–42).

On May 11, 2016, Philip's surgeon submitted a C-9 request for medical service with the Bureau of Worker's Compensation. The surgery was scheduled for July 1, 2016. On May 20, 2016, Philip's surgery was approved by the Bureau of Worker's Compensation. Plaintiff's employment with J&D was terminated the same day. (*Id*. at ¶¶ 43–46). Plaintiff alleges that she was "terminated in retaliation for her husband filing the WC Claim, and/or for being associated with a disabled person" and "because Defendants did not want to cover her husband's approved surgery under the WC Claim." (*Id*. at ¶ 47–48).

On December 18, 2017, Plaintiff initiated this case alleging claims of disability discrimination in violation of both the ADA and Ohio law and disability discrimination by association, as well as claims for wrongful termination and intentional infliction of emotional distress. Defendants J&D and Pat Clemens have moved to dismiss Counts II, III, IV and V for failure to state a claim.

## II.  STANDARD OF REVIEW

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ.

P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Defendants move for a partial dismissal of Plaintiff's Complaint, seeking to dismiss Count II (disability discrimination in violation of Ohio Revised Code § 4112); Count III (disability discrimination by association in violation of Ohio Revised Code § 4112); Count IV (wrongful termination in violation of public policy); and Count V (intentional infliction of emotional distress). The Court will consider each claim in turn.

A.   **Counts II and III – Disability Discrimination by Association**

In Count II, Plaintiff alleges disability discrimination in violation of Ohio Revised Code § 4112 and in Count III, she asserts disability discrimination by association. Defendants move to dismiss these claims because Plaintiff herself does not suffer from a disability and Ohio Revised Code § 4112 does not support a claim for disability discrimination by association.

Ohio Revised Code § 4112.02(A) provides:

> [i]t shall be an unlawful discriminatory practice . . . [f]or any employer, because of the . . . disability. . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Defendants assert that the plain language of the statute is clear and unambiguous, that discrimination is forbidden only against the disabled person. Further, Defendants reference two Sixth Circuit decisions, as well as district court decisions, holding that discrimination by association does not exist under Ohio Revised Code § 4112. Plaintiff seems to concede that her claims for disability discrimination are not viable under Ohio law, but asserts that she has sufficiently pled a claim for disability discrimination by association under the ADA.

The Court of Appeals for the Sixth Circuit has addressed this issue and determined that discrimination by association does not exist under Ohio Revised Code § 4112.02. In *Smith v. Hinkle Mfg.*, 36 Fed. Ap'x 825, 830 (6th Cir. 2002), the Sixth Circuit recognized that, unlike the ADA, Ohio Revised Code § 4112.02 does not support an associational claim:

> The Ohio handicap discrimination statute contains no comparable prohibition against associational discrimination. And although Ohio courts sometimes look to federal law for guidance in disability discrimination cases, they do so only insofar as the ADA is "similar" to the Ohio law. The plaintiffs' claim under Ohio Rev. Code § 4112.02(A) has no merit.

*Id.* at 831-32 (internal citations omitted). Similarly, in *Kepreos v. Alcon Labs, Inc.*, the Sixth Circuit found that "because [the plaintiff's] ADA claim was 'associational' in nature and because

4

Ohio's disability discrimination statute does not provide for such a claim, the district court correctly ruled that the plaintiff could not assert it under state law." *Id.*, 520 Fed. App'x 375, 376 (6th Cir. 2013) (internal citations omitted). There are also decisions from both the Northern and Southern Districts of Ohio following the Sixth Circuit precedent. *See, e.g., Sarak v. DDR Corp.*, No. 1:10cv942, 2012 U.S. Dist. LEXIS 130431, *19 (S.D. Ohio, Sept. 13, 2012) ("To the extent plaintiff is attempting to assert an 'associational' claim under Ohio law, courts have repeatedly held that no such claim exists in the disability context under Ohio law."); *Winkelmann v. Big Lot Stores, Inc.*, 1:108cv419, 2009 U.S. Dist. LEXIS 104902, *1 (S.D. Ohio, Nov. 10, 2009) ("the Ohio discrimination statute, unlike federal law, contains no prohibition against associational discrimination"); *Baker v. City of Toledo,Ohio*, No. 3:05cv7315, 2007 U.S. Dist. LEXIS 26795, *6 (N.D. Ohio, April 11, 2007) ("The Ohio statute contains no similar provision for 'associational disabilities' and, therefore, the Court holds there is no such claim under Ohio state law."); and *Helms v. Davita Healthcare Partners, Inc.*, No. 1:14-cv-879, 2015 U.S. Dist. LEXIS 51012, *2 (S.D. Ohio, April 17, 2015).

Because Eddy does not allege that she was disabled, the protections set forth in Ohio Revised Code § 4112.02(A) are not applicable to her, and therefore, Count II is hereby dismissed. Additionally, to the extent Count III is brought pursuant to Ohio law, it is also dismissed. However, Plaintiff's claim for disability discrimination by association under the ADA remains pending.

**B.     Count IV – Wrongful Termination in Violation of Public Policy**

Defendants seek dismissal of Count IV because Plaintiff has failed to identify the source of the public policy and because she has failed to sufficiently plead the remaining elements of this claim. To maintain a claim for wrongful termination in violation of public policy, the following four elements must be pleaded:

5

(1) That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);

(2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);

(3) That plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and

(4) The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Leininger v. Pioneed Nat'l Latex*, 115 Ohio St. 3d 311, ¶¶ 9–12 (2007) (quoting *Painter v. Graley*, 70 Ohio St.3d 377, 384 (1994)).

As an initial matter, Defendants argue that in Count IV, Plaintiff failed to identify with any degree of specificity the source of the public policy she claims to have been violated by her termination. However, Plaintiff has responded that the public policy is the ADA and Ohio Revised Code § 4112.02(A). Therefore, the Court will consider whether Plaintiff has sufficiently pleaded a claim for wrongful termination in violation of these policies.

### 1. Ohio Revised Code § 4112.02(A)

Defendants assert that to the extent Plaintiff bases her public policy claim on Ohio Revised Code § 4112.02(A), the claim fails because the statute does not set forth a "clear public policy" prohibiting the termination of employees associated with a disabled person.

To successfully bring a public policy claim, the plaintiff-employee must show that she is "a member of the class of people who are the intended beneficiaries of" the statute setting forth the public policy. *See Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 940 (6th Cir. 2000); s*ee also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 312 (6th Cir. 2000) ("Although there appears to be an express public policy prohibiting discrimination against disabled individuals . . .

Plaintiff, having failed to show a viable claim under the ADA, is necessarily precluded from claiming that his termination violated Ohio public policy.").

In this case, Plaintiff is not a member of the class of people who are the intended beneficiaries of Ohio Revised Code § 4112.02(A). The statute prohibits the unlawful discharge and/or discrimination of employees that are disabled. Plaintiff is not disabled. Further, as discussed above, Ohio Revised Code § 4112.02(A) does not extend its protections to employees that are associated with a disabled person. Therefore, Plaintiff has not sufficiently pleaded a claim for wrongful termination in violation of public policy with respect to Ohio Revised Code § 4112.02.

2. **ADA**

Defendants concede that 42 U.S.C. § 12101 sets forth a clear public policy prohibiting discrimination against employees associated with a disabled person. Nonetheless, Defendants still move to dismiss this claim because the *jeopardy* element is not satisfied because the remedies found in the ADA are sufficient to protect society's interest. Plaintiff, in opposition relies on *Bukta v. J.C. Penney Co.*, 359 F. Supp. 2d 649 (N.D. Ohio 2004), which recognized a common law action for wrongful discharge in violation of public policy under Ohio law based on violations of the ADA and Ohio Revised Code § 4112.02. Defendants counter that the *Butka* decision was overruled and heavily criticized.

The Ohio Supreme Court has made clear that "when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy." *Leininger*, 2007-Ohio-4921, at ¶ 27. Accordingly, "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim

7

and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Id.*

In accordance with this principle, courts have consistently found that "the statutory remedies that exist under the ADA . . . are adequate to protect society's interest in discouraging employers from engaging in discrimination and further provide sufficient compensation to the victims of such discrimination." *See Dillbeck v. Huntington Nat'l Bank,* No. 2:03-cv-0689, 2005 U.S. Dist. LEXIS 10273, *18 (S.D. Ohio, May 26, 2005); *see also Day v. Nat'l Elec. Contrs. Ass'n*, 82 F.Supp.3d 704, 708 (S.D. Ohio 2014) ("Because the ADA provides an available remedy to Plaintiff he cannot bring the same claim under Ohio common law.").

Accordingly, because the ADA already provides a statutory remedy to Plaintiff, she cannot sufficiently maintain a separate claim for wrongful termination in violation of public policy, premised on the ADA.

C.   **Count V – Intentional Infliction of Emotional Distress**

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress must be dismissed because she has failed to allege any factual allegations to support this claim. To maintain a claim for intentional infliction of emotional distress, Plaintiff must allege the following elements: "(1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community;' (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" *Wait v. OS Rest. Servs.*, No. 3:15-cv-0133, 2015 U.S. Dist. LEXIS 110239 at *6

(S.D. Ohio Aug. 20, 2015) (Rose, J.) (citing *Ashcroft v. Mt. Sinai Medical Ctr.*, 588 N.E.2d 280, 284 (6th Cir. 1990)).

Defendants argue, and the Court agrees, that Plaintiff's allegations in the Amended Complaint are a mere formulaic recitation of the elements of a claim for intentional infliction of emotional distress. Plaintiff alleges that demoting her, "decreasing her pay, re-programming the call system so that she would receive all the incoming calls, setting her up to fail, and ultimately terminating her employment" are all adverse employment actions that caused her emotional distress. (Doc. 9, Am. Compl. ¶¶97–99). Plaintiff continues, "Defendants conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community." (*Id.* ¶100). Even in Plaintiff's response, she continues to restate the standard and generally asserts she suffered mental anguish because her husband was injured at work and she was terminated.

The only facts that Plaintiff maintains were extreme and outrageous are the same allegations that support her wrongful termination claims. However, mere termination from employment is insufficient to satisfy the second element of an intentional infliction of emotional distress claim. S*ee Gontero v. PNC Bank*, No. 1:13-cv-2636, 2014 U.S. Dist. LEXIS 27492, *11 (N.D. Ohio 2014) ("The settled rule in Ohio is that the mere claim that a[n employment] termination was unjustified does not rise to the level of extreme and outrageous required to state a claim for intentional infliction of emotional distress.") (citing *Dirham v. Van Wert Cty. Hosp.*, 2000 U.S. Dist. LEXIS 6417 (N.D. Ohio Mar. 3, 2000); *see also Sparks v. Univ. Hosp. Health Sys., Inc.*, No. 1:13-cv-2733, 2014 U.S. Dist. LEXIS 23630, *6–7 (N.D. Ohio Feb. 25, 2014) (it is well-established that wrongful termination of employment alone does not constitute "extreme and outrageous conduct" without an allegation of something more)).

Accordingly, Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim is **GRANTED**.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss is **GRANTED**. Counts II, III, IV, and V are hereby dismissed. Count I of the Amended Complaint remains pending.

The Clerk shall remove Document 14 from the Court's pending motions list.

**IT IS SO ORDERED.**

   */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**